UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROSEMOUNT AEROSPACE INC.<br>    Plaintiff,<br><br>vs.<br><br>HARCO LABORATORIES, INC., a<br>Connecticut Corporation and<br>BRAD POWELL, an individual,<br>    Defendants, | Civil Action No. 3:03CV0444(AWT)<br><br><br><br><br><br>January 5, 2004 |

## ROSEMOUNT AEROSPACE INC.'S MEMORANDUM IN OPPOSITION TO HARCO'S MOTION FOR A PROTECTIVE ORDER

### I. INTRODUCTION

Rosemount Aerospace Inc. ("Rosemount Aerospace") opposes Defendant Harco Laboratories, Inc.'s ("Harco") Motion for a Protective Order regarding Rosemount Aerospace's Request to Permit Entry for Inspection. The inspection is relevant and uniquely helpful to understanding how Harco used information from Weed Instruments to cause breaches of the non-competition and confidentiality agreements at issue in this case.

In 1994, Rosemount Aerospace acquired certain business assets from Weed Instrument Company, Inc. ("Weed"). As part of the acquisition, Weed agreed to a non-competition covenant and agreed that confidentiality would be preserved as to know-how relating to aerospace products including Total Air Temperature, or TAT, sensors.

This case arises out of Harco's tortious interference with the non-competition and confidentiality provisions of the Weed agreement and other agreements. Harco hired Brad Powell, an ex-Weed engineer who worked with other Weed employees on TAT sensors. Powell assisted Harco in selecting additional Weed employees to provide information and training that helped Harco make what it could not make on its own: TAT sensors. Weed has already acknowledged the breach and settled with Rosemount Aerospace. Rosemount Aerospace

1

continues to pursue its claim that Harco tortiously interfered with its contract with Weed and misappropriated trade secrets, among other claims, by using information improperly acquired from Weed employees to design, develop, and manufacture TAT sensors.

Rosemount Aerospace alleges that Harco misappropriated confidential information and induced contract breaches to make or train its employees to use clamps, brazing equipment, tools, and other equipment used in the production of TAT sensors (hereinafter "equipment"). For example, Harco paid John Labaj ("Labaj"), a Weed employee from Austin, Texas, to spend nine days in Connecticut to train Harco employees on how to use brazing equipment and related tools to make TAT sensors. Years earlier, Weed, with Labaj's assistance, spent several weeks learning and refining the difficult process used to make TAT sensors. Weed agreed not to assist others making aerospace products such as TAT sensors for seven years, or until January 2002. Weed also agreed to keep such valuable techniques confidential. However, beginning in 1999, and continuing well into 2001, Harco paid Labaj to divulge these same confidential techniques to Harco and train Harco personnel to make TAT sensors. Harco thus induced the breach of the Weed (and other) agreements.

The case also relates to the activities of Glenn Beatty ("Beatty"), a former Weed employee, who assisted Harco in the design and preparation of computer models and tooling of equipment used to manufacture Harco's TAT sensors. The request for inspection directly relates to the equipment involved with Labaj's and Beatty's training and assistance in manufacturing Harco's TAT sensors.

Harco's four objections to Rosemount Aerospace's request for inspection are unfounded. First, Harco's assertion that the inspection is unnecessary is unsupported, untrue, and irrelevant. Harco has provided virtually no documents regarding its manufacturing processes and apparently

2

did its best to leave no paper trail regarding Labaj's and Beatty's roles.  Moreover, the Federal Rules do not limit a party to one form of discovery.

Second, Harco's objection regarding confidential information fails because the stipulated protective order provides adequate safeguards.  Harco fails to show why it cannot simply move to another room or cover up any confidential equipment or materials unrelated to this litigation. Third, Harco asserts that the inspection would be rendered moot if this Court's decision denying Harco's contempt motion in <u>another</u> case involving these parties were reversed by the Judge. This wishful thinking on Harco's part provides no basis to selectively bring discovery to a standstill.

Finally, Harco asserts that its manufacturing process for the TAT sensor in question is not currently in use.  In response to this objection, Rosemount Aerospace agreed that Harco need not perform a mock demonstration of the process.  However, Rosemount Aerospace should be allowed to observe the Harco facilities and equipment while dormant, which will provide relevant information without unduly burdening Harco.

Rosemount Aerospace requests that Harco be required to give Rosemount Aerospace prompt notice of the dates of any future use of its TAT sensor operations and a reasonable opportunity to observe them.  This is appropriate in addition to the inspection of apparently dormant equipment because techniques involving the use of the equipment are a significant part of the proprietary know-how acquired through Weed employees, and because such an approach is efficient and will not unduly burden Harco.

Harco's objections to the inspection also appear inconsistent.  Harco does not object to the request on the basis that the techniques or equipment to be inspected are confidential. However, Harco does object on the basis that <u>other</u> techniques or equipment that <u>might</u> be seen during the inspection <u>are</u> confidential.  This seeming inconsistency is readily explained when the

3

causes of action in the case are considered. On the one hand, Harco does not want Rosemount Aerospace, or even Rosemount Aerospace's attorneys or expert witnesses, to have access to the techniques and equipment it uses to make TAT sensors, as it recognizes, just as Rosemount Aerospace and Weed did, that these techniques and equipment are valuable commercial information. On the other hand, Harco does not want to admit to the Court that the techniques and equipment at issue are confidential, as that would effectively support Rosemount Aerospace's claims that Harco tortiously interfered with the confidentiality and non-compete provisions at issue by acquiring information about these techniques and equipment from Weed.

Harco's approach to balancing these contrary interests is to seek to block Rosemount Aerospace's access to the techniques and equipment in their entirety, using objections other than the confidentiality of the equipment and techniques themselves. As shown below, Harco's back-door objections to the requested inspection are without basis and fail to overcome the compelling reasons to allow the requested inspection.

## II. FACTUAL BACKGROUND

This case regards Harco's tortious interference with Rosemount Aerospace's rights pertaining to the design, development, and manufacture of TAT sensors.[1] On December 5, 1994, Rosemount Aerospace acquired the aerospace-related assets of Weed Instrument Company, Inc. ("Weed"). Weed designed, developed, manufactured, and sold a variety of products. Its aerospace-related products included TAT sensors. The purchase agreement between Rosemount Aerospace and Weed includes a seven-year non-competition covenant involving aerospace products, such as TAT sensors. It also includes provisions relating to the non-use and non-

---

[1] This is the second litigation between Rosemount Aerospace and Harco. Harco Labs, Inc. v. Goodrich Corp., No. 3:01CV1277 (AWT) (hereinafter "Harco I"), regards Harco's infringement of Rosemount Aerospace's distinctive trade dress of its total temperature sensor.

disclosure of certain commercially valuable information by Weed, including information regarding TAT sensors. (First Amended Complaint, ¶ 8.)

Brad Powell ("Powell") worked for Weed at the time Rosemount Aerospace acquired Weed's aerospace assets. As part of his employment with Weed, Powell signed an agreement (the "Powell Agreement") prohibiting Powell from using, copying or divulging, without Weed's written authorization, confidential information acquired by Powell in connection with his employment at Weed. (First Amended Complaint, ¶¶ 10, 13.) Powell also agreed, through the Powell Agreement, to surrender to Weed upon termination of his employment with Weed all sales, marketing, research, engineering, financial, management and other records, prints, drawings, papers, objects, and parts thereof, pertaining to any phase of the business of Weed. Powell further agreed not to take or retain any reproductions, copies, blueprints, or models thereof after such termination of employment.

Powell terminated his employment with Weed in 1995 and was hired by Harco in 1998. In June of 2000, Rosemount Aerospace received an anonymous package containing documents purportedly showing that Powell retained certain Weed confidential information and was working with at least one Weed employee, Glenn Beatty, to develop a TAT sensor for Harco. (See Exhibit 1.) The package included the following note:

> Brad Powell and Jorge Martinez have documents and tools from Weed Mfg. In TX and Lewis Engr in CT[2] that copy the TAT sensors made by you.

Rosemount more recently acquired documents from Mr. Labaj indicating that in 2001, Powell and Harco induced, contracted with, and paid Labaj, a Weed employee, to provide certain training to Harco employees regarding techniques used to make TAT sensors. Labaj was one of the Weed employees who spent several weeks learning and refining the difficult process used to

---

[2] Rosemount Aerospace's parent acquired Lewis Engineering as part of a larger acquisition.

make TAT sensors. In May 2001, Labaj, still working for Weed, provided training at Harco's facilities to Harco's employees for nine consecutive days concerning brazing techniques to manufacture TAT sensors, such techniques having been previously developed by Weed, sold to Rosemount Aerospace, and subject to the provisions of the agreement between Rosemount Aerospace and Weed. (See Exhibit 2., Declaration of Daniel W. McDonald, ¶ 2 (hereinafter "McDonald Decl. ¶, ___").) Labaj provided a copy of check stub Harco provided for his compensation. (Id.)

Weed acknowledged the breach of its agreements, and other agreements, with Rosemount Aerospace and settled with Rosemount Aerospace. Rosemount Aerospace continues to pursue its claim that Harco tortiously interfered with its contract with Weed and misappropriated trade secrets, among other claims, by using information improperly acquired from Weed employees to design, develop, and manufacture TAT sensors. Rosemount Aerospace's request for inspection is uniquely relevant to these claims.

The equipment developed and used with the assistance of Labaj and Beatty are presently in Harco's facility. On November 14, 2003, Rosemount Aerospace served Harco a request to inspect these documents and things. The request to inspect covers the equipment directly at issue in this case. The request reads:

> Plaintiff Rosemount Aerospace Inc. requests that Defendant Harco Laboratories, Inc. make available for inspection its manufacturing facilities and operations used in the assembly and brazing processes for total air temperature sensors.
>
> This request to inspect may include inspecting, photographing, measuring and operating the machines and/or observing the operations in use. Appropriate personnel must be available to operate or assist with operating any computers, machinery or brazing equipment used in the process of assembling or brazing total air temperature sensors.

Rosemount Aerospace does not seek informal depositions or unfettered access to Harco's facilities, nor is any alteration of equipment sought. The request is narrowly tailored to the information of most relevance.

### III. ARGUMENT

**A.   Inspection Of Harco's Manufacturing Facility Is Uniquely Relevant to Rosemount Aerospace's Claims.**

The Federal Rules of Civil Procedure give parties the opportunity to pursue information regarding "any manner, not privileged, which is relevant to the subject matter involved in the pending action . . . . The information sought need not be admissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). These broad principles apply to inspection requests. "Inspection is permitted, and indeed anticipated, by Rule 34(a), to be governed by the scope of Rule 26(b)." Cuno Inc. v. Pall Corp., 116 F.R.D. 279, 281 (E.D.N.Y. 1987) (motion to compel inspection of manufacturing process granted despite peripheral confidential technology in facility). In Micro Chemical, a case cited by Harco, the court stated that Federal Rule of Civil Procedure 34(a) "clearly permits" a party to measure, photograph, or test by operation the opponent's machinery. Micro Chem., Inc. v. Lextron, Inc., 193 F.R.D. 667 (D. Col. 2000) (allowing inspection of machinery as long as there was no alteration).

Rosemount Aerospace's request to inspect is directly and uniquely relevant to its claims in its First Amended Complaint. Rosemount Aerospace's First Amended Complaint details the allegations raised against Harco. It alleges that Harco gained knowledge of Weed confidential information in order to manufacture TAT sensors. (First Amended Complaint, ¶¶ 11, 14, 16-23.) Harco solicited Weed employees to assist in the design and production of computer models and

specific tooling[3] used to manufacture the TAT sensor.  (See, e.g., McDonald Decl., ¶ 3.)  Weed employees also trained Harco employees how to use brazing equipment to braze hot metal onto the exterior of the sensor without damaging the sensor or overheating the sensor.  (Id. at ¶ 2.) The package received by Rosemount Aerospace indicates that some of these tools may have come directly from Weed, which would also violate the non-compete and other agreements. Thus, the inspection goes to the core of what assets and information Harco took and the extent to which Harco's solicitations were improper in view of the Powell Agreement and the non-competition agreement between Rosemount Aerospace and Weed.

Having the ability to observe Harco's manufacturing equipment first hand is highly relevant to the issues in this litigation.  First, allowing Rosemount Aerospace the opportunity to inspect, observe, measure, and photograph the equipment used by Harco to manufacture TAT sensors will reveal information that no document is likely to reveal.  For example, the inspection may reveal telltale product information showing that the equipment and tooling was obtained from Weed.  For example, names or other unique identifiers visible on the equipment may show the source of the equipment.  Such inscriptions are hard evidence, unfiltered by self-serving Harco documents.  There is no substitute for this access.

Harco's documentation and handling of physical equipment has a checkered past. Specifically, Harco brochures obtained in connection with the first case against Harco, involving trade dress infringement, appear to actually picture Rosemount TAT sensors.  Yet, when Rosemount sought documentation regarding the source of the TAT sensor used for this brochure, Harco suspiciously was unable to find a single piece of paper that would document which probe was photographed for its brochures.  The original photograph was never produced.

---

[3] Production of TAT sensors requires specific tools that hold parts of the TAT sensor in place while other parts of the sensor are bent into a shape needed for assembly.  Tooling procedures instruct how to use the tools and equipment.

8

Moreover, in documents obtained in the trade dress case,[4] Powell made statements clearly indicating his desire to avoid a paper trail regarding the information and things obtained from Weed employees. For example, in March 1999, Powell sent an e-mail to Glenn Beatty regarding whether or not John Labaj, who then (and now) was a Weed employee, would provide assistance. Powell was thrilled at the prospect, but sought to avoid a paper trail show that Harco paid Labaj for these services. In fact, Powell requested that Beatty keep things under the table. (See Exhibit 3 (including full dialog between Powell and Beatty).)

This is consistent with Rosemount Aerospace's experience to date in obtaining documents from Harco in both lawsuits, as neither case has involved production from Harco of a single document revealing Labaj's nine day visit to Harco or payments made to Labaj for his training. Thus, Harco's claim that document production should adequately reveal the complete story revealing Harco's surreptitious use of Weed employees is not credible.

Moreover, Rosemount Aerospace may use experts to evaluate how Harco's equipment and techniques were derived from Weed's equipment and techniques. These experts should be allowed access to the equipment at issue, just as Harco witnesses have such access.

**B.      Harco's Documents Are No Substitute For An Inspection.**

Harco asserts its production of documents is sufficient as a substitution for the inspection. (Harco Motion, ¶ 6.) This assertion is unsupported by reference to any documents. Harco has provided virtually no documents regarding its manufacturing processes.

Furthermore, as shown above, visual inspection and ability to take photographs of the equipment at issue will provide unique and important information that helps counsel, experts, jury, and judge alike.

---

[4] Under the Protective Ordered entered in this case, confidential documents from the trade dress case may be used in this case, and vice versa.

Rosemount Aerospace has the right to observe the equipment used in the production of Harco's TAT sensor regardless of purported documentation showing the processes used to manufacture the TAT sensor. "Consistent with Rule 34(a), defendant is not at liberty to refuse plaintiff's request for an on-site visit and substitute what it deems comparable." Curry v. Allan S. Goodman, Inc., 2003 U.S. Dist. LEXIS 17861, *3 (D. Conn. May 22, 2003).[5] In Curry, the defendant objected to the plaintiff's request for an inspection because it provided a videotape of its warehouse operation, which the defendant believed obviated the need for plaintiff's expert to conduct an on-site visit. Id. at 2. Defendant further objected because the visit would be disruptive to the defendant's operation. Id. The Court rejected both arguments and allowed the inspection to go forward. Id. at 3.

Harco attempts to block Rosemount Aerospace's right to observe the equipment Harco uses to manufacture TAT sensors because it alleges the information can be found in documents already produced or documents that will be produced. (Harco Motion, ¶ 6.) Harco cites Struthers Scientific & Int'l Corp. v. General Foods Corp., 45 F.R.D. 375 (S.D. Tex. 1968) for this proposition. Unlike Struthers, which found the plaintiff's request for inspection premature based on the infancy of discovery and that the information sought may be found through other discovery, Rosemount Aerospace's request is tailored to equipment that is only found in Harco's facility and uniquely relevant. Harco was unlikely to document the procedures used to develop equipment it obtained surreptitiously from Weed and Weed employees. Harco has not, and cannot, show that its documents provide comparable information. Finally, discovery closes on March 1, 2004, and Rosemount must have the right to inspect now.

**C.**   **There Is No Issue Regarding Confidentiality With Rosemount Aerospace's Requested Inspection Because A Stipulated Protective Order In Place.**

Harco objects to Rosemount Aerospace's request for inspection because Rosemount Aerospace may see confidential information about <u>other</u> equipment during the inspection. This objection fails for a number of reasons. For one, the stipulated protective order provides

---

[5] For the Court's convenience, copies of unreported cases are attached as Exhibit 4.

adequate safeguards.  Moreover, Harco may move or cover up any confidential equipment not related to this litigation.

Any fear of having the opposing party view confidential proprietary technologies is "unwarranted in light of the protective order." Cuno Inc. v. Pall Corp., 116 F.R.D. 279, 28 (E.D.N.Y. 1987).

Interestingly, Harco does not claim the information contained in Rosemount Aerospace's Request for Inspection is confidential.  Rather, Harco makes a vague claim that technology unrelated to this case is confidential.  (Harco Motion, ¶ 7.)  Harco also cites Slater Steel, Inc. v. Vac-Air Alloys Corp., 107 F.R.D. 246 (W.D.N.Y. 1985) for the idea that courts invoke protective orders when there is good cause for protecting highly confidential information.  That case is not on point.  First, Slater Steel was a request to inspect a non-party's facility, which garners broader protection than when the request is of a party's facility. Id. at 247.  Moreover, Harco cannot meet the good cause standard because it does not specify what this other, confidential technology is. Id. at 248.  The protective order entered in this case covers both confidential and attorneys' eyes-only information.

Because the equipment used to manufacture the TAT sensor is allegedly not currently operational, it appears that Harco can preclude Rosemount Aerospace from seeing the unrelated technology by moving the relevant technology into another room or covering up the unrelated technology.  These added precautions, however, are not needed because of the protective order.  Indeed, if and when the facility is operational, Rosemount Aerospace should have the opportunity to see it in operation.  The protective order moots this objection.

D.     **Harco's Appeal From This Court's Ruling Denying Its Motion For Contempt In Another Case Should Not Stop Discovery From Proceeding In This Case.**

Harco asserts that a reversal of this Court's ruling denying Harco's  motion for contempt in the other case involving these parties may moot this inspection.  This desperate argument fails for a number of reasons.  For one thing, Harco's assertion is notably selective.  Harco does not suggest that any other discovery in the case should be held up while it hopes for this reversal,

11

and indeed is pursuing depositions of Rosemount personnel. It is obviously unfair for Harco to seek discovery in this case, yet block discovery against it. The parties proposed a discovery schedule, accepted by the Court, that allows fact discovery to proceed until March 1, 2004. Harco missed its opportunity to play this card when the discovery schedule was set up.

Moreover, the notion that any discovery in the case should be held up for this reason is preposterous. Harco not only lost the motion, but its motion is all but mooted by the protective order in this case, which allows confidential information from both cases to be used in either case. The inspection is relevant to other discovery in the case. Blocking it would risk cumbersome follow-up depositions once the inspection proceeds. Rosemount Aerospace should not be blocked from this important discovery on the remote chance Judge Thompson not only reverses this Court's sound and proper decision that no contempt occurred, but takes the reversal much further with the draconian relief of dismissal of this case and denial of Rosemount Aerospace's day in court on Harco's wrongdoing.

### E.     Rosemount Aerospace's Request Is Not Overly Burdensome Or Expensive.

Harco's objection that the manufacturing process of the TAT sensor is not currently in use should not prevent the inspection of dormant equipment from going forward now. First, Rosemount Aerospace will not require Harco to perform a mock demonstration of the process used to manufacture TAT sensors while the manufacturing facility is not operational. Therefore, Harco will not have to interrupt the manufacturing of other products or find personnel to construct a mock demonstration.

Moreover, Rosemount Aerospace's request for inspection is narrowly tailored to cover devices directly relevant to this case, including the equipment used to produce Harco's TAT sensors and their parts. When a request for inspection is limited to a particular area of a facility, it is not considered overly burdensome. See Curry, 2003 U.S. Dist. LEXIS 17861 at *3 (allowing inspection regarding particular area in defendant's warehouse).

Finally, Harco objects to the cost of the inspection because Harco alleges it is not currently manufacturing TAT sensors. Rosemount Aerospace has accommodated this concern by limiting the inspection to observing the dormant equipment. Rosemount Aerospace's request is narrowly tailored to eliminate any significant burden on Harco. Rosemount Aerospace does not seek the right to undertake any testing of equipment while not in operation, nor does it seek to question employees of Harco during the inspection. However, should Harco resume manufacture of TAT sensors, Rosemount Aerospace believes it is fair and reasonable and not burdensome on Harco to permit Rosemount Aerospace to inspect Harco's facilities again if and when such manufacturing is resumed. In the meantime, however, Rosemount should be allowed to undertake its inspection of equipment, as Harco has given no indication that a resumption of its TAT sensor manufacturing processes is likely to resume in the next few months or even before trial in this case.

An additional inspection, should Harco resume production, is appropriate because the techniques used in the actual manufacturing process are highly relevant to determining the extent to which Harco took proprietary know-how through Weed employees.

## IV. CONCLUSION

Harco's motion seeking a protective order should be denied and Rosemount Aerospace should be allowed to conduct an inspection. The equipment covered by the inspection is uniquely relevant to Rosemount Aerospace's claims in this litigation and is clearly discoverable. Harco's objections are insufficient, especially because Rosemount is willing to accommodate Harco's concerns that the process is not currently in operation. Therefore, Defendant's Motion for Protective Order to bar the inspection of Harco's manufacturing and brazing facilities should be denied, and Harco should be compelled to allow the inspection requested to proceed.

**ROSEMOUNT AEROSPACE INC.**

By its attorneys,

_____
James Mahanna (ct24681)
DAY, BERRY & HOWARD LLP
CityPlace I
Hartford, CT 06103-3499
Tel. (869) 275-0100
Fax: (806) 275-0343
jmahanna@dbh.com

Daniel W. McDonald (ct23281)
William D. Schultz (ct25198)
MERCHANT & GOULD P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota  55402-2215
Ph. (612) 332-5300
Fx. (612) 332-9081

*Attorneys for Plaintiff*

## **CERTIFICATION**

      THIS IS TO CERTIFY that a copy of the foregoing was mailed, first class mail postage prepaid, on this 5th day of January 2004 to:

David S. Poppick (ct13202)
Jonathan M. Plissner (ct23773)
Epstein, Becker & Green, P.C.
One Landmark Square, 18th Fl
Stamford, CT  06901

                                                                              _____
                                                                              James Mahanna