UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ROSEMOUNT AEROSPACE, INC.,              :

                   Plaintiff,        :        Civil Action No. 303CV0444 (AWT)

         vs.                         :

WEED INSTRUMENT COMPANY, INC., :
and HARCO LABORATORIES, INC.,           :

              Defendants.    :        FEBRUARY 4, 2004

**EXHIBITS IN SUPPORT OF DEFENDANT'S MOTION FOR A PROTECTIVE ORDER REGARDING SUBPOENA DUCES TECUM SERVED ON GLEN BEATTY**

Exhibit A

AO 88 (Rev. 11/91) Subpoena in a Civil Case

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF TEXAS

ROSEMOUNT AEROSPACE INC.,
                   Plaintiff,
           v.

WEED INSTRUMENT COMPANY, INC.,
and HARCO LABORATORIES, INC.
                  Defendants

**SUBPOENA IN A CIVIL CASE**
Case is Venued in District of Connecticut
CASE NUMBER:  303CV0444

TO:   Glenn Beatty
       c/o J. Gordon  McHaney
       301 Congress Avenue
       Suite 1800
       Austin, TX  78701

☐    YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐    YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects:

**See attached Schedule A**

| PLACE<br>J. Gordon  McHaney<br>301 Congress Avenue<br>Suite 1800<br>Austin, TX  78701 | DATE AND TIME<br>1:00 p.m. on Thursday, February 5, 2004 |
|---|---|

☐    YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>*Daniel W McDonald* | DATE<br>February 2, 2004 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Daniel McDonald
Merchant & Gould
3200 IDS Center
80 South Eighth Street
Minneapolis, MN  55402-2215
612-332-5300

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on Reverse)

AO 88 (Rev. 11/91) Subpoena in a Civil Case

## PROOF OF SERVICE

| DATE | PLACE |
|---|---|
| February 2, 2004 | 301 Congress Avenue, Suite 1800, Austin, Texas 78701 |

SERVED

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| J. Gordon McHaney (for Glenn Beatty) | Federal Express and U.S. Mail |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Joel E. Bergstrom | Attorney |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _February 2, 2004_

_____
SIGNATURE OF SERVER

Merchant & Gould, 3200 IDS Center, 80 South 8th Street, Minneapolis, MN  55402

_____
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On a timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

## DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions are to be applied with regard to the subpoena:

1.      Unless otherwise indicated, the term "Harco" refers to the Defendant, Harco Laboratories, Inc., as well as any parent, subsidiary, predecessor, successor or other related corporate entities of Harco Laboratories, Inc. and Harco Advanced Components, Inc.

2.      The term "Powell" refers to the Defendant, Brad Powell.

3.      The terms "Defendant" or "Defendants" refer to the nominal Defendants, Brad Powell and Harco Laboratories Inc., as well as the partners, directors, officers, agents, employees and attorneys of any of them, and any other person acting or purporting to act on behalf of any of them.

4.      The terms "you" and "your" refer to Glenn Beatty.

5.      The term "person" refers to and includes natural persons, corporations, partnerships, proprietorships, joint ventures, unincorporated associates, trusts, estates, governments (and agencies thereof), quasi-public entities, and all other forms of specifically identifiable entities.

6.      The term "Harco associate" refers to the employees, partners, directors, officers, agents, and attorneys of Harco and any person acting or purporting to act on behalf or in furtherance of the business of Harco.

7.      Unless otherwise indicated, the term "Rosemount" refers to the Plaintiff, Rosemount Aerospace Inc.

8.      "Harco TAT sensors" or "Harco's TAT sensors" means any Total Air Temperature ("TAT") sensor made, used, sold, offered for sale, marketed, or otherwise disclosed or proposed by Harco.

9.      The term "Weed" refers Weed Instrument Company, Inc., as well as any parent, subsidiary, predecessor, successor or other related corporate entities of Weed Instrument Company, Inc.

10.     "Weed TAT sensors" or "Weed's TAT sensors" means any TAT sensor made, used, sold, offered for sale, marketed, or otherwise disclosed or proposed by Weed.

11.     The term "date" means the exact day, month, and year if ascertainable; if not exactly ascertainable, then the closest approximation that can be made thereto in terms of months and years, seasons, or relation to other events or matters.

12.    The terms "document," "record," and "documents and things" mean all documents and things that may be discovered pursuant to Fed. R. Civ. P. 34, including but not limited to, including but not limited to correspondence, email, mail, facsimiles, notes, business records, meeting minutes or summaries, papers, memorandums, letters, marketing materials, proposals, contracts, reports, and products.

13.    The terms "identify" and "identity," with respect to a natural person, require that the following information be provided as to such person:

      a.    the full name of the person;

      b.    the present or last known address of such person, including street address, city, and state;

      c.    the employment of such person at the time referred to in response to these Interrogatories, by position held and by name and address of employer; and

      d.    the present or last known employment of such person, by position and by name and address of employer, if different from the information described in subparagraph (c) above.

14.    The terms "identify" and "identity", with respect to any entity other than a natural person, require that the following information be provided as to such person:

      a.    the full name of such entity;

      b.    the present or last known address of such entity, including street address, city, and state;

      c.    the principal business or activity of such entity; and

      d.    the form of organization of such entity.

15.    The terms "identify" and "identity" with respect to a document (regardless of whether any claim of privilege is asserted), require that the following information be provided as to such document:

      a.    the general character of the document (e.g. a letter, memorandum, contract, etc.);

      b.    the date it bears or, if undated, the date upon which it was written or otherwise created;

      c.    the identity of the person who wrote, authored, or otherwise created or generated it;

      d.    a summary of the subject matter of the document;

e.    the name and address of the present or last known custodian of the document; and

f.    the date upon which the document, or a copy thereof, was received by you or came to your attention.

16.    The terms "identify" and "identity," with respect to a property or facility (regardless of whether any claim of privilege is asserted), require that the following information be provided as to such property or facility:

a.    the complete address of the property or facility;

b.    a brief description of the size of the property;

c.    a summary of how the property or facility is used including a description of the operations conducted at the property or facility; and

d.    the date on which the property or facility was obtained.

17.    The singular form of a word (e.g., "document" or "person") shall also refer to the plural, and words used in the masculine, feminine, or neuter gender refer to and include all genders.

18.    The words "and" and "or" shall be construed conjunctively or disjunctively as necessary to bring within the Interrogatory all information which might otherwise be construed as outside its scope.

19.    The term "relationship" includes but is not limited to: the nature and extent of control, ownership, financing, capitalization, payment of salaries/expenses/ losses, and the sharing or granting of assets both real and personal between two companies as well as the descriptions used by one company to describe its relationship to another.

## DOCUMENTS REQUESTED

1.    All documents and things you have given to David Poppick concerning your work for Harco, Brad Powell, or Jorge Martinez, including but not limited to those documents sent by your attorney, J. Gordon McHaney, on November 3, 2003.

2.    All documents relating to work done at the request of or for the benefit of Harco, Brad Powell or Jorge Martinez.

3.    Electronic versions, including but not limited to computer files and hard drives, of all documents relating to work done at the request of or for the benefit of Harco, Brad Powell or Jorge Martinez.

4.    All documents concerning any financial transactions relating to work done at the request of Brad Powell, Jorge Martinez, or any Harco employee, including but not limited to, purchase

orders, invoices, cancelled checks, payments to or from Harco, estimates, statements of work, travel expenses, account legers and any other document containing payments relating to equipment, software, or materials purchased by or on behalf of Harco, and payments regarding work performed or reimbursement for work performed or expenses incurred for Harco.

5.    All documents reflecting any email, or other correspondence or documentation exchanged between you and Brad Powell, Jorge Martinez or any other Harco employee since November 1997.

6.    All documents concerning any communication, including but not limited to, any emails, minutes, correspondence or notes. discussing work to be done by you or John Labaj for Brad Powell, Jorge Martinez or Harco, whether or not authorized by Weed, and any related conversations or meetings regarding this work by any present or former Weed employee.

7.    Any documents, including but not limited to phone records, reflecting conversations you have had with Harco, Brad Powell, Jorge Martinez or John Labaj.

8.    All documents relating to Harco's selection of vendors of design and CAD software, aerospace testing facilities, tooling, and other aerospace equipment.

9.    All documents relating to or reflecting the receipt, acceptance, or use of the equipment, for work done on behalf of Harco including, but not limited to invoices, quotes, proposals, requests for proposal, and purchase requisition forms.

10.    All documents, including but not limited to models and drawings, regarding the design of fixtures, development and preparation of solidworks models, benchmark testing, mechanical layouts, or shape design of any aerospace product of Harco, including but not limited to TAT sensors.

11.    All documents, including but not limited to emails, correspondence, equipment checkout sheets, and inventory lists, reflecting your, or any present or former Weed employee's, use of Weed resources, tools, or equipment to train, support, demonstrate or assist Brad Powell, Jorge Martinez, or Harco in the design, development, production, manufacture, marketing or sale of total air temperature sensors after December 5, 1994, including preparation of a first article test report written in December of 2001.

12.    Any documents, including but not limited to phone records, reflecting conversations you have had with Harco, Brad Powell, Jorge Martinez or John Labaj.

13.    All documents and things you obtained from and during your employment with Weed, including but not limited to employment agreements, manuals, and memoranda.

Exhibit B

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROSEMOUNT AEROSPACE INC. ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 303-CV-0444 (AWT) |
| ) | |
| vs. ) | |
| ) | |
| HARCO LABORATORIES, INC., a ) | |
| Connecticut Corporation and ) | |
| BRAD POWELL, an Individual ) | |
| ) | |
| Defendants. ) | November 25, 2003 |
| ) | |

## FIRST AMENDED COMPLAINT

For its complaint against Defendants, Plaintiff Rosemount Aerospace Inc.

("Rosemount Aerospace") states and alleges as follows:

## PARTIES

1.    Rosemount Aerospace is a corporation organized and existing under the

laws of Delaware and has a principal place of business at 14300 Judicial Road,

Burnsville, Minnesota, 55306-4898.  Rosemount Aerospace is engaged in the business of

designing, developing, manufacturing, selling, maintaining and servicing temperature

sensors for use on aircraft, including the total air temperature sensor shown in the

photograph attached hereto as Exhibit 1.

2.    Upon information and belief, Defendant Harco Laboratories, Inc.

("Harco") is a corporation organized and existing under the laws of Connecticut and has a

principal place of business at 186 Cedar Street, Branford, Connecticut 06405-0010.

Among other businesses, Harco is engaged in the business of manufacturing and selling

temperature sensors for use on aircraft.

3.      Upon information and belief, Defendant Brad Powell ("Powell") is an individual who resides in Connecticut.  Powell is a former employee of Weed Instrument Company, Inc. ("Weed") and is currently employed by Harco.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1) because it is a controversy between citizens of different States and the amount in controversy exceeds $75,000.00, exclusive of costs, at least in the form of unjust enrichment from the actions complained of herein.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## FACTS

6.      On December 5, 1994, Rosemount Aerospace and Weed executed an Asset Purchase Agreement (the "Purchase Agreement") for the purchase of Weed's Aerospace Division by Rosemount Aerospace.  As of the execution of the Purchase Agreement, Weed's Aerospace Division was engaged in the design, development, manufacture, sale, maintenance and servicing of temperature sensors, including but not limited to total air temperature sensors.  The Purchase Agreement had a closing date (the "Closing") of January 3, 1995.

7.      Through its acquisition of Weed's Aerospace Division, Rosemount Aerospace paid for, bargained for, and acquired trade secret and proprietary information regarding a variety of Weed's products, including total air temperature sensors.  A photograph of Weed's total air temperature sensor ("Weed Total Air Temperature Sensor") is attached hereto as Exhibit 2.

2

8.    To protect the value of the assets Rosemount Aerospace purchased from

Weed, and as part of the agreement bargained and paid for, the Purchase Agreement

included a non-competition covenant, as well as provisions relating to the non-use and

non-disclosure of certain information by Weed after the Closing.  In particular, Weed (the

Seller) and Rosemount Aerospace (the Buyer) agreed as follows:

> 8.10    Non-Competition Covenant.  Seller agrees that it shall not,
> for a period of seven years from the Closing, at any place
> throughout the world, either directly or indirectly, alone or with or
> on behalf of any other person or entity, Participate (as hereinafter
> defined) in the design, development, creation, testing, assembly,
> manufacture, servicing, distribution, license, lease or sale of
> products for the Aerospace Market (as hereinafter defined)
> currently or heretofore manufactured by Seller or Buyer,
> competitive with such products or performing the same function as
> such products, nor will Seller become associated in any business
> capacity whatsoever with another business, directly or indirectly,
> whether by license, partnership, joint venture, sponsor or any other
> form of cooperative effort or relationship, in connection with the
> design, development, creation, testing, assembly, manufacture,
> servicing, distribution, license, lease or sale of products for the
> Aerospace Market currently of heretofore manufactured by Seller
> or Buyer, competitive with such products or performing the same
> function as such products.  For purpose of this Agreement, the
> term "Participate" includes, without limitation, any direct or
> indirect involvement, participation of (sic) liaison with or in, or
> organization of, any business or enterprise, whether as a partner,
> sole proprietor, licensor, agent, representative, independent
> contractor, advisor, consultant, creditor, stockholder, owner or
> otherwise, other than by ownership of less than five percent of the
> stock of a publicly held corporation whose stock is traded on a
> national securities exchange or in the over-the-counter market.  For
> purposes of this Agreement the term "Aerospace Market" includes
> fixed and rotary wing craft, space vehicles, missiles and unmanned
> vehicles, and related test and ground support equipment and gas
> turbine engines for use on aerospace, marine or ground
> applications and any other market served by the Business.
>
> 8.11    Non-Use; Non-Disclosure.  Seller shall not have any right,
> license or power to use the technology, information or Intellectual
> Property Rights and Know How related to the Business ("IP
> Rights") other than as is permitted under the Supply Agreement or

the License and, accordingly, shall not have at any time any right to otherwise use or disclose IP Rights after the Closing Date.

Seller will hold in confidence and will not use, and will use reasonable efforts to cause its officers, directors, employees, accountants, counsel, consultants, advisors and agents to hold in confidence and not use, all documents and information related to the Business, except that this restriction shall not apply to information that (i) is disclosed in published literature or in issued patents; (ii) is generally known to the public or in the public domain through no fault of Seller; (iii) is required to be disclosed by order of any court or governmental agency having jurisdiction over Seller; or (iv) is required to be disclosed in fulfilling a legal obligation, such as the filing of tax returns. In the event that Seller becomes legally compelled to disclose any such information, Seller shall provide Buyer with prompt notice of such requirement so that Buyer may seek a protective order or other appropriate remedy. In the event that such protective order or other remedy is not obtained, Seller shall furnish only that portion of such information which is in the opinion of its counsel legally required and will cooperate with, and not oppose, action by Buyer to obtain an appropriate protective order or other reliable assurance that confidential treatment will be accorded such information. Seller will be responsible for the fees and expenses of its counsel in connection with any actions taken under the preceding sentence.

9.     Upon information and belief, Powell worked for Weed at the time the Purchase Agreement was executed. Powell had access to proprietary technical information regarding Weed's total air temperature sensors and was knowledgeable about the skills possessed by other Weed employees relating to the design, assembly and/or manufacture of Weed's total air temperature sensors. Upon information and belief, Powell also knew that Weed was subject to the non-competition covenant and the non-use and non-disclosure provisions in the Purchase Agreement.

10.     To protect the value of its assets, Rosemount Aerospace, including through its predecessor in interest, Weed, required employees to execute agreements relating to the confidentiality of trade secrets. When Powell first joined Weed as an

4

employee in 1991, he signed a document titled, "Employee Agreement Relating to Trade Secrets and Non-Competition" (the "Powell Agreement"). The Powell Agreement included the following obligations:

> 1.      EMPLOYEE agrees to promptly disclose in writing and does hereby assign all ideas, concepts, processes, discoveries, improvements, and inventions made by EMPLOYEE alone or jointly with others in the course of such employment or within one year of the termination of such employment, which relate to the business of WEED (hereinafter "Information"), and agrees to cooperate fully in any such action or actions reasonably required to protect the rights of WEED in all countries of the world with respect to any such information.   It is recognized that the confidential information acquired by EMPLOYEE in connection with such employment is to remain confidential and is not to be used, copied, or divulged, or caused or permitted to be used, copied, or divulged except when authorized in writing by WEED. This obligation shall continue so long as such information remains legally protectable as to persons receiving it in a confidential relationship.

11.     Upon information and belief, during the course of his employment at Weed, Powell acquired trade secrets and confidential information relating to Weed's various technologies and products.

12.     Upon information and belief, Weed has not authorized Powell to use or divulge any of the trade secrets or confidential information he obtained during his employment at Weed.  Trade secrets and confidential information Powell obtained in connection with his employment at Weed are legally protectable property of Rosemount Aerospace due to their transfer under the Purchase Agreement.

13.     The Powell Agreement also included a provision regarding the treatment of Weed's property upon termination of Powell's employment with Weed.  Under this provision, Powell agreed as follows:

5.    EMPLOYEE agrees that upon termination of employment for whatever reason, EMPLOYEE will surrender to WEED all sales (including customer and prospect lists), marketing, research, engineering, financial, management and other records, prints, drawings, papers, objects, and parts thereof, pertaining to any phase of the business of WEED, and that EMPLOYEE will not take or retain any reproductions, copies, blueprints, or models thereof.

14.    Upon information and belief, when Powell left his employment with Weed, he failed to surrender to Weed certain materials, including a total air temperature sensor manufactured by and owned by Weed. Under the Purchase Agreement, the Weed Total Air Temperature Sensor is the property of Rosemount Aerospace and Powell has not been authorized in any way to keep it in his possession.

15.    In 1998, Harco hired Powell as its Director of Advanced Technology. Upon information and belief, Powell proposed to the management of Harco that Harco design, manufacture and sell total air temperature sensors that would directly compete with Rosemount Aerospace's total air temperature sensor.

16.    Upon information and belief, while employed at Harco, Powell used and provided to Harco the Weed Total Air Temperature Sensor as well as trade secrets and confidential information subject to the provisions of the Powell Agreement, including but not limited to paragraphs 1 and 5 thereof. And pursuant to the Purchase Agreement, the Weed Total Air Temperature Sensor and such trade secrets and confidential information was the property of Rosemount Aerospace. Upon information and belief, both Powell and Harco knew the Weed Total Air Temperature Sensor and such trade secrets and confidential information disclosed by Powell to Harco regarding Weed's aerospace products was trade secret and confidential information of Rosemount Aerospace.

17.    To help Harco compete with Rosemount Aerospace, Powell contacted several Weed employees from 1999 to 2002, including Glenn Beatty ("Beatty"), to solicit their assistance in the design, development, creation, testing, assembly, and manufacture of aerospace products. Beatty and other Weed employees responded favorably to Powell's and Harco's solicitation, and Harco eventually hired and paid these Weed employees on a contract basis to assist in the design, development, creation, testing, assembly, and manufacture of aerospace products. The activities of Harco and the Weed employees took place within the unexpired term of the non-competition covenant in the Purchase Agreement.

18.    Upon information and belief, when Powell contacted the Weed employees from 1999 - 2002, both he and Harco knew Beatty and the other Weed employees were contractually obligated to Weed not to disclose Weed trade secrets and confidential information pursuant to the Purchase Agreement.

19.    Upon information and belief, when Powell contacted the Weed employees from 1999 - 2002, both he and Harco knew Beatty and the other Weed employees had knowledge of Weed trade secrets and confidential information relating to the manufacture of aerospace products, and in particular, certain highly valuable brazing techniques necessary to manufacture total air temperature sensors, that such information was developed at Weed, and that such information was sold by Weed to Rosemount Aerospace pursuant to the Purchase Agreement. Upon information and belief, when Powell contacted the Weed employees from 1999 - 2002, both he and Harco knew that Rosemount Aerospace took reasonable measures to maintain the secrecy of the Weed

7

trade secrets and confidential information known to Beatty and the other Weed employees.

20.    In 2001, Powell and Harco induced, contracted, and paid John Labaj ("Labaj"), a Weed employee, to provide certain training for Harco employees. Thereafter, in May, 2001, Labaj provided training at Harco's facilities to Harco's employees for nine consecutive days concerning brazing techniques to manufacture total air temperature sensors, such techniques having been previously developed by Weed, sold to Rosemount Aerospace, and subject to the provisions of the Purchase Agreement. Upon information and belief, Powell and Harco knew that the information about which Labaj trained Harco employees constituted valuable Weed trade secrets and confidential information owned by Rosemount Aerospace. For this reason Powell and Harco attempted to conceal Labaj's nine day visit to Harco facilities. These measures included, but were not necessarily limited to, Labaj charging his expenses to Powell's credit card.

21.    Upon information and belief, when Powell contacted Beatty, Powell knew Beatty was subject to an employment agreement with Weed (the "Beatty Agreement") similar to the one Powell signed when he worked for Weed. The Beatty Agreement included a confidentiality provision under which, Beatty (the employee) and Weed (the employer) agreed as follows:

8

1.    EMPLOYEE agrees to promptly disclose in writing and does hereby assign all ideas, concepts, processes, discoveries, improvements, and inventions made by EMPLOYEE alone or jointly with others in the course of such employment or within one year of the termination of such employment, which relate to the business of WEED (hereinafter "Information"), and agrees to cooperate fully in any such action or actions reasonably required to protect the rights of WEED in all countries of the world with respect to any such information.    It is recognized that the confidential information acquired by EMPLOYEE in connection with such employment is to remain confidential and is not to be used, copied, or divulged, or caused or permitted to be used, copied, or divulged except when authorized in writing by WEED. This obligation shall continue so long as such information remains legally protectable as to persons receiving it in a confidential relationship.

22.    As a result of the assistance Powell, Beatty and Labaj provided to Harco, Harco completed a design of a total air temperature sensor, and brought such product to market.  Attached hereto as Exhibit 3 is a Harco advertisement marketing and offering for sale to the aerospace market a total air temperature sensor.  A photograph of a Harco total air temperature sensor is attached hereto as Exhibit 4.  Upon information and belief, but for the assistance provided by Powell and the Weed employees to Harco in violation of the Purchase Agreement, the Powell Agreement, and the Beatty Agreement, Harco would not have been able to complete the design, development and manufacture of total air temperature sensors, and/or would have brought such product to market much later than it has brought it.  Rosemount Aerospace has been and will continue to be damaged by these activities, including, but not limited to the continued misappropriation of the trade secrets and confidential information purchased by Rosemount Aerospace from Weed pursuant to the Purchase Agreement (such information still maintained as trade secrets and confidential information by Rosemount Aerospace), and the loss of business by Rosemount Aerospace and damage to Rosemount Aerospace's goodwill.

23.    Upon information and belief, Powell, Harco, Beatty, and Labaj knew that the above-described activities breached the Purchase Agreement, including at least the non-competition covenant in paragraph 8.10 of the Purchase Agreement and the confidentiality provisions in paragraph 8.11 of the Purchase Agreement, and paragraph 1 of the Powell and Beatty Agreements, and that this breach resulted in Harco's misappropriation of Rosemount Aerospace assets that would harm Rosemount Aerospace and defeat the bargained-for and paid-for benefit of the Purchase Agreement.

## COUNT I

## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST HARCO

1. – 23.    Rosemount Aerospace repeats and realleges the paragraphs 1 – 23 as if fully set forth herein.

24.    The cause of action set forth arises under the laws of the state of Connecticut.

25.    Harco tortiously interfered with Rosemount Aerospace's contractual relations with Weed, and the contracts with Powell and Beatty.

26.    Harco induced Weed to breach the Purchase Agreement by soliciting participation from Weed in the design, development, creation, testing, assembly and/or manufacture of Harco's total air temperature sensor in violation of the Purchase Agreement, including at least the non-competition covenant in paragraphs 8.10 and 8.11 of the Agreement.

27.    Harco induced Powell to breach the Powell Agreement by soliciting participation from Powell in the design, development, creation, testing, assembly and/or manufacture of Harco's total air temperature sensor in a manner that caused such a

breach. In particular, Harco induced Powell to disclose trade secrets and confidential information in violation of the Powell Agreement, including at least the confidentiality provision in paragraph 1 of the Agreement, and use assets of Weed in violation of the Powell Agreement.

28.    Harco induced Beatty to breach the Beatty Agreement by soliciting participation from Beatty in the design, development, creation, testing, assembly and/or manufacture of Harco's total air temperature sensor in a manner that caused such a breach. In particular, Harco induced Beatty to disclose trade secrets and confidential information in violation of the Beatty Agreement, including at least the confidentiality provision in paragraph 1 of the Agreement.

29.    Harco induced the breach of the Purchase Agreement, fully aware that Weed had executed the Purchase Agreement with Rosemount Aerospace that prohibited Weed from using certain confidential information and assisting Harco in the manner described above. In fact, Harco took steps to conceal its activities because it was fully aware that its activities would cause a breach of the Purchase Agreement by Weed.

30.    Harco induced the breach of the Powell Agreement, fully aware that Powell had executed the Powell Agreement with Weed that prohibited Powell from assisting Harco in the manner described above.

31.    Harco induced the breach of the Beatty Agreement, fully aware that Beatty had executed the Beatty Agreement with Weed that prohibited Beatty from assisting Harco in the manner described above.

32.    Harco's actions were taken with the knowledge that a breach of the Purchase Agreement and the Powell and Beatty Agreements would harm Rosemount

Aerospace, either as a party to the Weed, Powell and Beatty Agreements or as a successor in interest or beneficiary of such agreements. In fact, as a direct result of the benefits it obtained from inducing the breach of the Weed, Powell and Beatty Agreements, Harco has bid against Rosemount Aerospace on contracts for such products, and on at least one occasion has obtained business that it knew would have otherwise gone to Rosemount Aerospace. Harco knew that the breaches of the Weed, Powell and/or Beatty Agreements it induced would unfairly enrich it at Rosemount Aerospace's expense. Indeed, the breaches harmed Rosemount Aerospace more than any other actual or potential competitor.

33.    Harco's inducement and tortious interference was without justification.

34.    Rosemount Aerospace has suffered harm and damage as a result of Harco's tortious interference and inducement of these breaches and is likely to continue to be harmed and damaged unless Harco is enjoined in a manner that redresses such inducement of breaches. Harco has been unjustly enriched by the services it obtained from Weed, Powell and Beatty in violation of the Weed, Powell and Beatty Agreements.

## COUNT II

## VIOLATION OF THE CONNECTICUT UNIFORM TRADE SECRETS ACT AGAINST HARCO

1. – 34.    Rosemount Aerospace repeats and realleges the paragraphs 1-34 as if fully set forth herein.

35.    The cause of action set forth arises under the laws of the state of Connecticut.

36.    By and through its actions, Harco has misappropriated Weed trade secrets and confidential information, including information relating to brazing techniques. Harco

knew that such information was developed at Weed, was owned by Rosemount Aerospace, was of great value to Rosemount Aerospace, and was the subject of reasonable efforts by Weed and Rosemount Aerospace to maintain its secrecy.

37.    Harco used the misappropriated trade secrets and confidential information, including information relating to brazing techniques to aid Harco's completion of products, including total air temperature sensors, and brought such products to market. Upon information and belief, but for its misappropriation of the trade secrets and confidential information, Harco would not have been able to complete the design, development and manufacture of such products, and/or would have brought such products to market much later than it has brought it.

38.    Harco has misappropriated and its actions constitute further, threatened misappropriation of Rosemount Aerospace's trade secrets under the Connecticut Uniform Trade Secrets Act.

39.    Harco's misappropriation of Rosemount Aerospace's trade secrets has been willful.

40.    Harco's violations of the Connecticut Uniform Trade Secrets Act have damaged Rosemount Aerospace.

41.    Rosemount Aerospace has no adequate remedy at law for Harco's violations of the Connecticut Uniform Trade Secrets Act.

42.    As a result of the foregoing, Harco is liable to Rosemount Aerospace for double the actual damages proven at trial, together with attorney's fees, as provided by the Connecticut Uniform Trade Secrets Act.

## COUNT III

## VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT AGAINST HARCO

1. – 42.        Rosemount Aerospace repeats and realleges the paragraphs 1-42 as if fully set forth herein.

43.        Harco's actions herein constitute ongoing and threatened violations of the Connecticut Unfair Trade Practices Act.

44.        Harco's ongoing and threatened violations of the Connecticut Unfair Trade Practices Act have been willful.

45.        Harco's violations of the Connecticut Unfair Trade Practices Act have damaged Rosemount Aerospace.

46.        Rosemount Aerospace has no adequate remedy at law for Harco's violations of the Connecticut Unfair Trade Practices Act.

47.        As a result of the foregoing, Harco is liable to Rosemount Aerospace for attorney's fees, as provided by the Connecticut Unfair Trade Practices Act.

## COUNT IV

## BREACH OF CONTRACT AGAINST POWELL

1. – 47.        Rosemount Aerospace repeats and realleges the paragraphs 1-47 as if fully set forth herein.

48.        The cause of action set forth arises under the laws of the state of Texas, as specified in the Powell Agreement.

49.        Powell breached the Powell Agreement, at least by his direct or indirect involvement or participation in the design, development, creation, testing, assembly and/or manufacture of Harco's total air temperature sensor.  These activities in breach of

14

the Powell Agreement include direct assistance to Harco, disclosure of Weed's or Rosemount Aerospace's trade secrets and confidential information, and failure to return to Weed or its successor in interest or beneficiary Rosemount Aerospace any and all Weed property upon termination of Powell's employment with Weed.

50.    Rosemount Aerospace has suffered harm and damage as a result of Powell's breach and is likely to continue to be harmed and damaged.

**WHEREFORE**, Rosemount Aerospace prays that the Court enter an order:

A.    Enjoining Harco, its directors, officers, agents, servants, employees, subsidiaries, affiliates, and all persons in active concert or participation with, through, or under Harco from continued manufacture, distribution, display, offering for sale, marketing, use and sale of any and all Harco products, including but not necessarily limited to Harco's total air temperature sensor, that were built and manufactured with the wrongful participation of Weed employees and/or the misappropriated trade secrets of Rosemount Aerospace, including but not limited to the Harco total air temperature sensor designs shown in Exhibits 3 and 4, for a period of four years;

B.    Awarding to Rosemount Aerospace all of Harco's profits resulting from its sales of any and all Harco products, including but not necessarily limited to total air temperature sensors, that were built and manufactured with the wrongful participation of Weed employees and/or the misappropriated trade secrets of Rosemount Aerospace, and Rosemount Aerospace's damages resulting from such of Harco's sales, at least in the form of the unjust enrichment of Harco through the wrongfully induced participation of Weed employees, with interest;

15

C.      An award requiring Harco to pay for Rosemount Aerospace's attorneys' fees and costs, plus interest, as damages arising from the wrongful actions described herein, and/or under other powers of the Court that may apply;

D.      An order requiring Harco and Powell to deliver to this Court, for destruction, all copies in Harco's possession or control of all of the sensors, test equipment, parts, documents, and other items and pictorial or graphic representations thereof and of advertisements and promotional materials depicting the items that were built with the wrongful participation of Weed employees and/or the use of misappropriated trade secrets of Rosemount Aerospace, as well as all molds, patterns, prints, assembly instructions and other items;

E.      A judgment that Harco tortiously interfered with Rosemount Aerospace's contractual relations with Weed;

F.      A judgment that Harco tortiously interfered with Rosemount Aerospace's contractual relations with Beatty;

G.      Permanent injunctive relief against Harco, ordering Harco and Harco's officers, directors, agents, servants, employees, attorney's and all others acting under or through it, and Powell, to refrain from disclosing or making use of the trade secrets and confidential information of Rosemount Aerospace;

H.      A judgment that Powell breached his contract with Weed and awarding damages for such breach;

I.      Awarding Rosemount Aerospace all such other relief as the Court shall deem just and proper, including punitive damages against Harco as permitted by law.

16

Rosemount Aerospace hereby demands a trial by jury of all issues so triable.

PLAINTIFF, ROSEMOUNT AEROSPACE INC.,

by: _____

James Mahanna (ct24681)
Day, Berry & Howard LLP
CityPlace I
Hartford, Connecticut  06103-3499
Tel: (860) 275-0100
Fax: (860) 275-0343

Daniel W. McDonald (ct23281)
William D. Schultz (ct25198)
Merchant & Gould, P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota  55402-2215
Tel: (612) 332-5300
Fax: (612) 332-9081

Its Attorneys

17

Exhibit C

AO88 (Rev. 11/91) Subpoena in a Civil Case

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS

*January 29th 2004*
*8:38 am*
*N.O.*

ROSEMOUNT AEROSPACE INC.,
                    Plaintiff,

            v.

WEED INSTRUMENT COMPANY, INC.,
and HARCO LABORATORIES, INC.
                    Defendants

**SUBPOENA IN A CIVIL CASE**
Case is Venued in District of Connecticut
CASE NUMBER: 303CV0444

TO:    Glenn Beatty
       1211 Robin Trail
       Round Rock, TX 78681

☐ **YOU ARE COMMANDED** to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
| | DATE AND TIME |

☐ **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
| | |

☒ **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects).

| PLACE See Schedule A
J. Gordon McHaney
301 Congress Avenue
Suite 1800
Austin, TX 78701 | DATE AND TIME 1:00 p.m. on Wednesday, February 4, 2004 |
| --- | --- |

☐ **YOU ARE COMMANDED** to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) *Attorney for Plaintiff* | DATE January 22, 2004 |
| --- | --- |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER
Joel Bergstrom
Merchant & Gould
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402-2215
612-332-5300

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on Reverse)

## CERTIFICATION

The undersigned hereby certifies that a copy of the foregoing was sent, via Regular Mail,

this 4th day of February 2004, to:


James Mahanna, Esq.
Day, Berry & Howard LLP
CityPlace 1
Hartford, CT  06103-3499


Daniel W. McDonald, Esq.
William Schultz, Esq.
Merchant & Gould P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota  55402-2215

Jonathan M. Plissner