UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ROSEMOUNT AEROSPACE, INC.,         :

           Plaintiff,         :    Civil Action No. 303CV0444 (AWT)

        vs.                :

WEED INSTRUMENT COMPANY, INC.,     :
and HARCO LABORATORIES, INC.,      :

           Defendants.       :    FEBRUARY 4, 2004

**MEMORANDUM OF LAW IN SUPPORT OF
HARCO'S MOTION FOR A PROTECTIVE ORDER REGARDING
THE SUBPOENA DUCES TECUM SERVED ON GLEN BEATTY**

**Introduction**

This Memorandum of Law is submitted on behalf of Defendant Harco Laboratories, Inc. ("Harco") in support of its Motion for a Protective Order Regarding the Subpoena Duces Tecum Served on Glen Beatty ("Beatty"), pursuant to Federal Rule of Civil Procedure 26(c) ("FRCP"), and sanctions under Local Rule 37(a)(4), against Plaintiff Rosemount Aerospace, Inc. ("Rosemount").

The underlying facts are set forth in Harco's accompanying Motion for a Protective Order, and for brevity, they are not repeated here. Harco's Motion for Protective Order should be granted for the reasons set forth below.

ST:27733v1

## Argument

## HARCO'S MOTION FOR A PROTECTIVE ORDER AND SANCTIONS SHOULD BE GRANTED

Pursuant to FRCP Rule 26(c) this Court has the power upon a motion to make an order "which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including, among other things ordering the disclosure not be had, ordering specific conditions upon or methods of disclosure, limiting the disclosure, and ordering that trade secrets or other confidential or commercial information not be revealed or be revealed in a designated way.

Pursuant to Local Rule 37(a)(4) "[w]here a party has sought ... discovery which has resulted in the filing of a motion, and that party's position is not warranted under the existing law and cannot be supported by a good faith argument for extension, modification or reversal of existing law, sanctions will be imposed in accordance with applicable law . . . "

### The Document Requests To Beatty Should Be Limited To The One Product That Rosemount Contends Has Been Misappropriated

In actions involving claims of misappropriated trade secrets, courts routinely require plaintiffs to identify the specific trade secrets and documents allegedly misappropriated and the method of misappropriation before allowing discovery of the defendant's trade secrets. Then, the discovery is limited to what has been identified to have been misappropriated. In <u>Xerox Corp. v. International Business Machines Corp.</u>, 64 F.R.D. 367 (S.D.N.Y. 1974), the Court required the

plaintiff to specify the trade secrets and misappropriated documents, and ruled, in words equally apt here:

> A defendant is entitled to know the bases for plaintiff's charges against it. The burden is upon the plaintiff to specify those charges, not upon the defendant to guess at what they are.

See also, Struthers Scientific & International Corp. v. General Foods, 51 F.R.D. 149 (D. Del. 1970); Englehard Corp. v. Savin Corp., 505 A.2d 30, 33 (Del. Ch. 1986).

In Leucadia, Inc. v. Applied Extrusion Technologies, Inc., 755 F.Supp. 635 (D. Del. 1991), the Court postponed the plaintiff's discovery of the defendant to permit the defendant to ascertain the alleged misappropriated trade secrets. In Magnox v. Turner, No. 11951, 1991 WL 182450 (Del. Ch. Sept. 10, 1991), the Court denied a motion to compel and ruled that relevance cannot be determined until the trade secrets claimed to be misappropriated are identified with particularity, and it is shown why the information should be accorded trade secret protection.

Therefore, courts consistently rule that requested discovery depends on the existence of a trade secret and a showing of relevance before the discovery of trade secrets proceeds. Automatic Drilling Machines Inc. v. Miller, 515 S.W.2d 256 (Tex. 1974); Lever Bros. Co. v. Proctor & Gamble Mfg. Co., 38 F.Supp. 680 (D. Md. 1941); Hartley Pen Co. v. United States District Court, 287 F.2d 324 (9th Cir. 1961).

In <u>Microwave Research Corp. v. Sanders Assoc., Inc.</u>, 110 F.R.D. 669 (D. Mass. 1986), even though the parties had a confidentiality agreement before the litigation began, the Court denied the plaintiff's motion for an order compelling production of documents in an action for unfair and deceptive acts, misappropriation of confidential and proprietary assets and breach of contract. The defendant objected to the plaintiff's request for production of documents because the request called for disclosure of highly sensitive trade secret information relating to the defendant's ongoing product development. The plaintiff argued that the production was proper because the requested information was relevant to the claim.

The Court ruled that it is not enough to analyze the requested discovery in terms of relevance. The plaintiff failed to demonstrate that there was a substantial factual basis for the claim. The Court said that the plaintiff must be able to point to inclusion of its trade secrets or confidential information in its products that compete with the defendant's products. The Court reasoned that otherwise, it would be simple to obtain trade secrets by the mere assertion of a meritless claim. The Court said that in cases involving disclosure of confidential information, the Court must balance between disclosure and protecting the trade secrets. In that regard, the Court said that various procedures could be implemented to achieve that balance, including, requiring a plaintiff to specify in detail the trade secrets and confidential information alleged to have been misappropriated; appointing an independent expert to control areas of discovery or inspect both parties plants and papers; and/or delaying the production until there has been

sufficient other discovery to resist a motion for summary judgment.[1] See also, Puritan-Bennett Corporation v. Pruitt, 142 F.R.D. 306 (S.D. Iowa 1992).

In Brown Bag Software v. Symantec Corp., 960 F.2d 1465 (9th Cir. 1992), a copyright infringement suit, the District Court entered a protective order restricting the access of the plaintiff's in-house counsel to confidential trade secret information produced during discovery, and required the plaintiff to retain an independent consultant to view those trade secrets. On appeal, the Circuit Court affirmed, and said that it had to consider whether in-house counsel could lock-up trade secrets in his mind, safe from inadvertent disclosure to his client once he had read the documents. The Court said that the proper review of Protective Orders required examination factually of all risks and safeguards surrounding inadvertent disclosure by any counsel, whether in-house or retained. The Court concluded that the trade secrets revealed to the in-house counsel would place him in an untenable position of having to refuse his client/employer of legal advice lest he indirectly reveal the defendant's trade secrets. The Circuit

---

[1] In Microwave Research Corp., the plaintiff alleged not only a claim of misappropriation of trade secrets and confidential information, but also a breach of contract claim based on a written agreement by defendant not to disclose confidential information that was provided to the defendant during possible acquisition discussions of plaintiff by defendant. Id. at 110 F.R.D. at 669-671. The Court did not find that the confidentiality agreement and the fact that the defendant's employees were given access to the plaintiff's information gave the plaintiff the right to the broad discovery it requested without requiring it to have specified in detail the confidential information and trade secrets alleged to have been misappropriated. Significantly, the Court found that "substantial factual basis for plaintiff's claim that the defendant has misappropriated trade secrets" was not satisfied by the "fears and suspicions" that the defendant misappropriated its trade secrets, that defendant's employees were given access to the information and that the defendant cancelled an agreement for acquisition shortly before gaining access. Id. at 672. While the Court found these circumstances and inferences sufficient to support a "belief" grounded in fact that trade secrets may have been misappropriated, this was not sufficient evidence of a factual basis for the claim. Similarly in this case, the tortious interference with contractual relations claim based on the confidentiality agreements of Powell and former Weed employee Beatty (which is analogous to the breach of contract claim in Microwave Research Corp.), alleged access of Beatty or Powell to plaintiff's confidential information and the "fear and suspicion" of plaintiff that Beatty or Powell misappropriated trade secrets, does not provide a basis for plaintiff to avoid its burden to first specify in detail the trade secrets alleged to have been misappropriated.

Court ruled that the plaintiff's failure to implement the independent consultant method of access to the trade secrets rendered its request for unfettered right to discovery unsubstantiated.

Similarly, in Pat Tonnemacker v. Sasak, 155 F.R.D. 193 (D. Az. 1994), the Court denied the plaintiff's motion for production of internal audit manuals based on the defendant' argument that the documents were confidential, proprietary trade secrets whose disclosure would likely be harmful; the documents would add nothing to information already disclosed; or they were irrelevant.  These same rules apply here.  See also, Cities Series Oil Co. v. Celanese Corp. of America, 10 F.R.D. 458 (D. Del. 1950) (Court permitted routine written documentation of oxidation process, rather than inspection, and held that if that was insufficient, next step could be appointment of an impartial expert or special master to assist the court, under pledge of secrecy.)

Here, Rosemount's First Amended Complaint identifies with specificity only the TAT sensor as the product that Rosemount contends has been misappropriated by Harco and its employee Powell ("Powell") and former Weed employees who worked for Harco, including Beatty. No other product is identified.  Harco has agreed to discovery concerning the TAT sensor.  Rosemount now seeks to obtain from a non-party Beatty, pursuant to a Subpoena Duces Tecum, documents concerning unidentified products and technologies that are unrelated to the TAT sensor, as well as the TAT sensor.  However, Harco is not required to guess at what Rosemount's charges are.  Rosemount is not entitled to unfettered discovery that may reveal Harco's confidential trade secret information about products that do not relate to what Rosemount has specified has been misappropriated.

Further, the Beatty Employee Agreement Relating To Trade Secrets and Non-Competition at issue in this case is not limitless. It does not cover everything under the sun having to do with Harco aerospace products. It provides that the employee agrees to "disclose in writing and assign all ideas, concepts, processes, discoveries, improvements and inventions <u>made by the employee alone or jointly with others in the course of such employment or within one year of termination of such employment which relate to the business of Weed</u>." (Emphasis added.) Also, it provides that, "The confidential information acquired in connection with such employment is to remain confidential . . . so long as such information remains legally protectable as to persons receiving it in a confidential relationship."

The information sought by Rosemount from Beatty does not fall within the parameters of the Employee Agreement. What Rosemount seeks was not made by Beatty alone or with others in the course of their Weed employment. What Rosemount seeks has nothing to do with what Beatty did at Weed, or even products that relate to Weed's business. The Beatty Subpoena should not change Rosemount's burden to specify its charges in this action and instead rely on a claim of relevance that is insufficient to analyze discovery requests in this case. Rosemount's discovery requests should be limited to what it has specified - the TAT sensor.

**The FRCP Requires That The Initial Subpoena Duces Tecum On Beatty Should Have Been Served On Harco, And Service And Notice Rules Of The FRCP Should Be Followed**

The Federal Rules of Civil Procedure require that Defendant Harco be served properly and timely with discovery, including subpoenas and notices served by Rosemount on non-parties. Rule 45(b) specifically provides that, "Prior notice of any commanded production of documents and things ... shall be served on each party in the manner prescribed by Rule 5(b)". This was not done with the initial Beatty Subpoena Duces Tecum. See, Cash v. Jefferson Assocs., 1991 U.S. Dist. LEXIS 21631, No. H-90-460 (S.D. Tex. Mar. 8, 1991) (motion to quash granted where subpoena duces tecum issued without notice). Such compliance with the Federal Rules allows Harco the opportunity to protect its rights in confidential documents and information, like that requested by Rosemount from Beatty, that is outside the scope of discovery in this case. Instead, Harco, never having been served with the original Beatty Subpoena, was served with the subsequent Beatty Subpoena at 4:00 p.m. on February 2, 2004.[2] Rosemount should not be allowed to continue to ignore the FRCP notice and service requirements.

---

[2] The production date in the new Beatty Subpoena, served on February 2, 2004 at 4:00 p.m., is February 5, 2004, which also does not satisfy the "reasonable time for compliance" necessary to avoid a motion to quash pursuant to Rule 45 (c)(3)(A).

## Conclusion

For the foregoing reasons the Motion for a Protective Order and sanctions should be granted.

EPSTEIN BECKER & GREEN, P.C.

By _____
Jonathan M. Plissner, Esq. (#ct 23773)
David S. Poppick, Esq. (#ct13202)
Attorneys for Defendant
HARCO LABORATORIES, INC.
One Landmark Square, 18th Floor
Stamford, CT 06901
(203) 348-3737

and

WISE & WISE
Robert B. Wise, Esq.
Attorneys for Defendant
HARCO LABORATORIES, INC.
1100 Summer Street
Stamford, CT 06905
(203) 359-8877

## **CERTIFICATION**

The undersigned hereby certifies that a copy of the foregoing was sent, via Regular Mail, this 4th day of February, 2004 to:

Daniel W. McDonald Esq. (ct23281)
William D. Schultz, Esq.(ct25198)
Merchant & Gould PC
3200 IDS Center
80 South Eighth Street
Minneapolis, MN  55402-2215
Telephone:  (612) 332-5300
Facsimile:  (612) 332-9081


James Mahanna, Esq. (ct24681)
Day, Berry & Howard LLP
CityPlace 1
Hartford, CT  06103-3499
Telephone:  (860) 275-0100
Facsimile:  (860) 275-0343

_____
Jonathan M. Plissner